**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

UNITED STATES OF AMERICA,

                Plaintiff,

v.                                        CRIMINAL ACTION NO. 2:10-cr-00130

TERRY TOMBLIN,

                Defendant.

**MEMORANDUM OPINION AND ORDER**

The purpose of this memorandum opinion is to resolve the outstanding question of whether there is an adequate factual basis to support Defendant Terry Tomblin's plea of guilty to 21 U.S.C. § 843(a)(3).

## I. *FACTUAL BACKGROUND & PROCEDURAL HISTORY*

On August 19, 2010, the United States filed an information charging Defendant with acquiring or obtaining possession of a controlled substance by misrepresentation, fraud, forgery, deception, or subterfuge in violation of 21 U.S.C. § 843(a)(3). On November 1, 2010, the Court held a Rule 11 hearing to advise Defendant of his rights and accept the plea agreement Defendant reached with the United States. (Docket 13.) A stipulation of facts attached to the plea agreement details the facts of the alleged crime as follows. Over nearly five years, from April 2005 until March 2010, Defendant received approximately 7,100 hydrocodone pills from the Veterans Affairs Medical Center in Huntington, West Virginia, and affiliated Veterans Affairs ("VA") clinics. (Docket 15 at 8.) During his course of treatment with the VA, Defendant signed two controlled substance

agreements for non-cancer patients ("VA agreements"), which required Defendant to receive pain medication exclusively from the VA.  (*Id.*)  At the same time, and despite executing the VA agreements, Defendant sought and received approximately 4,600 hydrocodone pills from various physicians and pharmacies throughout West Virginia.  The stipulation continues to state that "defendant knew that if he disclosed the [outside] hydrocodone prescriptions [to the VA], the VA would not continue to prescribe him hydrocodone."  (*Id.*)  According to the United States, these facts support the charge in the information.

At the November 1 hearing, the Court expressed concern about the infirmities it perceived in the factual basis underlying Defendant's guilty plea, which was based on the record as it then stood.  Consequently, the Court tentatively accepted Defendant's guilty plea but deferred finding a factual basis for the charge until sentencing.  (Docket 19.)  Prior to sentencing, Defendant filed a memorandum that severely undercut the factual basis for his guilty plea.  (Docket 24.)  The sentencing memorandum was the first indication that Defendant wished to contest the factual basis,[1] and, in fact, Defendant sought to withdraw his plea of guilty in the sentencing memorandum.  (*Id.* at 1, 8.)  Perceiving the new quasi-adversarial nature of the case, the Court converted the sentencing hearing into a factual basis hearing and instructed the parties to establish or refute the factual basis at that time.

On February 15, 2011, the Court held the factual basis hearing.  At the hearing, the United States introduced several Memoranda of Interviews with VA health care providers and support staff.  Those memoranda indicate that Defendant was asked, on multiple occasions, whether he was

---

[1] Defendant received new court-appointed counsel between the plea hearing and sentencing-turned-factual-basis hearing.

2

receiving pain medication from outside sources.  Each time, according to the interviews and related notes, Defendant responded in the negative, although records from the West Virginia Board of Pharmacy plainly demonstrate otherwise.  (Docket 31.)  In response to the government's additional evidence, Defendant challenged the credibility of the interviewees, and he maintains that the factual basis is insufficient.

## II.  FACTUAL BASIS STANDARD

Before a court may enter judgment on a guilty plea, it must be satisfied that a factual basis for the plea has been established. Fed. R. Crim. P. 11(b)(3); *see also Santobello v. New York*, 404 U.S. 257, 262 (1971) (noting that it is within a court's discretion to accept or reject a proposed guilty plea).  The purpose of this requirement is to "protect a defendant who is in the position of pleading voluntarily with an understanding of the nature of the charge but without realizing that his conduct does not actually fall within the charge."  *United States v. Mastrapa*, 509 F.3d 652, 660 (4th Cir. 2007).  To effectuate this purpose, Rule 11(b)(3) demands fidelity to the letter of the law.  It is not sufficient that the defendant has engaged in some criminal activity that bears a resemblance to the offense charged; the Court must ensure that the facts establish each element of the crime with which the defendant is charged.  *McCarthy v. United States*, 394 U.S. 459, 467 (1969).  The Court's inquiry is not limited to the facts asserted at the defendant's plea colloquy.  The factual basis for the offense can be established by reference to any evidence or information in the record. *Mastrapa*, 509 F.3d at 660.  There is no per se standard for establishing the factual basis for an offense.  As stated by the Fourth Circuit:

> In order to comply with Rule 11(f) [now Rule 11(b)(3)], a district court need not replicate the trial that the parties sought to avoid. Rather, it need only be *subjectively satisfied* that there is a sufficient factual basis for a conclusion that the defendant

committed all of the elements of the offense. The district court possesses wide
discretion in determining whether a sufficient factual basis exists . . . .

*United States v. Mitchell*, 104 F.3d 649, 652 (4th Cir. 1997) (emphasis added). The principle
followed by the undersigned is that there must be some undisputed factual assertion in the record
that supports each element of the offense. This is by no means an onerous burden.

### *III. DISCUSSION*

21 U.S.C. § 843(a)(3) states that "[i]t shall be unlawful for any person knowingly or
intentionally . . . to acquire or obtain possession of a controlled substance by misrepresentation,
fraud, forgery, deception, or subterfuge." At the Rule 11 hearing, the Court instructed Defendant
that, in order to obtain a conviction on the sole charge against him, the United States would need to
prove the following elements beyond a reasonable doubt: (1) that Defendant acted knowingly or
intentionally, (2) in acquiring or obtaining possession of a controlled substance, and (3) that such
acquisition was affected by misrepresentation, fraud, forgery, deception, or subterfuge.

In his sentencing memorandum, Defendant challenges the factual basis by arguing that the
United States has failed to establish that he acted by fraud or misrepresentation in acquiring
hydrocodone from the VA.[2] (Docket 24 at 2-4.) As discussed more fully below, Defendant's
arguments are unpersuasive. Additionally, the statute does not require that Defendant acted by fraud
or misrepresentation exclusively. Instead, 21 U.S.C. § 843(a)(3) proscribes obtaining or acquiring
possession of hydrocodone by forgery, deception, or subterfuge as well.

---

[2] Defendant does not contest that he knowingly or intentionally obtained possession of a controlled
substance from the VA, or that he did so by silence or a failure to disclose material information. The
only point of law that Defendant raises in his sentencing memorandum is whether his failure to
disclose outside prescriptions to the VA constitutes a misrepresentation, fraud, forgery, deception,
or subterfuge sufficient to sustain his plea of guilty. (Docket 24 at 2.)

4

A.  *Fraud*

The main thrust of Defendant's sentencing memorandum is to distinguish between active concealment and passive nondisclosure in the realm of fraud.  Defendant argues that his conduct amounts to "mere silence" and "a mere failure to volunteer information," such that he acted without fraud under federal law.  (Docket 24 at 3.)  In making his arguments, Defendant relies heavily on *United States v. Colton*, 231 F.3d 890 (4th Cir. 2000), a bank fraud case dealing with a somewhat analogous federal statute.  A close reading of *Colton* is thus warranted.

In *United States v. Colton*, the Fourth Circuit reiterated in the fraud context the principle that federal courts interpreting federal statutes must infer that where terms are left undefined, Congress intended to incorporate common law definitions.  231 F.3d at 898.  At common law, fraud included "acts taken to conceal, create a false impression, mislead, or otherwise deceive in order to 'prevent[] the other [party] from acquiring material information.'" *Id.* (quoting Restatement (Second) of Torts § 550 (1977)).  The *Colton* court proceeded from this foundation to distinguish between concealment, which can serve as the basis of a fraud crime at common law, and simple nondisclosure, which cannot.  Concealment, according to the Fourth Circuit, is "characterized by deceptive acts or contrivances intended to hide information, mislead, avoid suspicion, or prevent further inquiry into a material matter.  *Id.* at 899.  In contrast, simple nondisclosure "is characterized by mere silence." *Id.*  The Fourth Circuit further explained that "[a]lthough silence as to a material fact (nondisclosure), without an independent disclosure duty, usually does not give rise to an action for fraud, suppression of the truth with the intent to deceive (concealment) does." *Id.* (citing *Stewart v. Wyo. Cattle-Ranche Co.*, 128 U.S. 383, 388 (1888)).  Under the binding precedent of *Colton*, then, fraud—as that term is used in federal statutes, unless Congress states otherwise—can be proved by

5

either (1) nondisclosure where a duty to disclose exists or (2) affirmative concealment, regardless of whether a duty to disclose exists. *See also Chiarella v. United States*, 445 U.S. 222, 227-28 (1980) ("At common law, . . . one who fails to disclose material information prior to the consummation of a transaction commits fraud only when he is under a duty to do so.").

At the factual basis hearing, Defendant vigorously argued that his conduct may have treaded the line between concealment and nondisclosure, but it ultimately amounts to mere nondisclosure. As a premise to that assertion, Defendant emphasized that the VA agreements Defendant executed did not impose upon him a duty to disclose outside pain medications, and therefore mere silence could not amount to concealment under the common law. Indeed, Defendant is correct that neither of the VA agreements—which Defendant executed on May 7, 2009, and February 24, 2006, respectively—impose a duty to disclose outside pain medications to the physicians or support staff at the VA. The VA agreements simply state that Defendant "agree[s] not to accept or request controlled substances from another . . . provider while receiving medication from the [VA]," Docket 24-1 ¶ 2, and that "[i]f there is evidence of [Defendant] receiving [pain medication] from other physicians . . . the medications will be discontinued, Docket 24-2 ¶ 13.

Although the VA agreements are crucial to the analysis, they do not constitute the only source of a duty to disclose sufficient to transform mere nondisclosure into actionable concealment.[3] Instead, from the express language of *Colton*, such a disclosure duty also can arise from fiduciary

_____

[3] Although the Court moves on to consider and ultimately find a legal duty outside of the VA agreements, the analysis would be far simpler and resources far more efficiently spent if the VA would incorporate an express duty to disclose into its agreements. As they stand, the VA agreements simply contain promises without imposing an affirmative duty on patients to disclose outside pain medications. The enforcement of this statute in similar circumstances would be greatly simplified with the addition of such language in the VA agreements.

6

relationships, statutes, or other legal relationships (such as the VA agreements and other contracts). 231 F.3d at 898.  Relevant to this case, West Virginia law imposes on all citizens a duty to disclose controlled substances to treating physicians under certain circumstances.  More specifically, W. Va. Code § 60A-4-410(a) provides: "It is unlawful for a patient, in an attempt to obtain a prescription for a controlled substance, to knowingly withhold from a practitioner, [sic] that the patient has obtained a prescription for a controlled substance of the same or similar therapeutic use in a concurrent time period from another practitioner."  The gist of this code section is to criminalize the nondisclosure of concurrent controlled substance prescriptions, thus imposing an affirmative duty on patients to disclose the information.  Defendant readily admits that he failed to disclose concurrent controlled substance prescriptions from outside physicians to the VA.  (Docket 24 at 5 ("Defendant Tomblin obtained hydrocodone from two providers without informing either of the other's prescribing.").)  Prescription records from the VA and the West Virginia Board of Pharmacy support that fact.  (Docket 31 at 27-32.)  In light of the independent legal duty imposed by state law and the Fourth Circuit's guidance in *Colton*, Defendant's nondisclosure to the VA amounts to actionable fraud sufficient to sustain a 21 U.S.C. § 843(a)(3) charge.  After reaching this conclusion, there is no need to address the more intricate question of whether, absent a legal duty to disclose, Defendant's conduct amounts to actionable concealment under *Colton*.

### B.  Subterfuge

Even if the statutory duty did not exist, however, the statute provides an alternate mode of establishing Defendant's culpability based on the facts in the record.  Although the Court is aware of no case law elaborating on the "subterfuge" aspect of 21 U.S.C. § 843(a)(3), it is a fundamental tenet of statutory construction that a court should "give effect, if possible, to every clause and word

of a statute." *Duncan v. Walker*, 533 U.S. 167, 174 (2001) (quoting *United States v. Menasche,* 348 U.S. 528, 538-39 (1955)).   Federal courts should be "'reluctan[t] to treat statutory terms as surplusage' in any setting." *Id.* (quoting *Babbitt v. Sweet Home Chapter, Cmties. for Great Ore.*, 515 U.S. 362, 404 (2000).   Implementing this principle, the Court must give meaning to the other words in 21 U.S.C. § 843(a)(3), and particularly "subterfuge," apart from the meaning of "fraud" described in *Colton*.

Interpreting another statute, the Supreme Court has stated that "[i]n ordinary parlance, and in dictionary definitions as well, a subterfuge is a scheme, plan, stratagem, or artifice of evasion" and noted that "'subterfuge' must be given its ordinary meaning and we must assume Congress intended it in that sense." *United Air Lines, Inc. v. McMann*, 434 U.S. 192, 203 (1977); *see also Pub. Emps. Ret. Sys. of Ohio v. Betts*, 492 U.S. 158, 167 (1989) (citing *McMann*, 434 U.S. at 203, and employing the same definition of "subterfuge").   Although both *McMann* and *Betts* were superseded by a statute that does not include the "subterfuge" provision, *see* 29 U.S.C. § 623(f)(2)(B)(ii), those decisions remain instructive.   In fact, several courts have drawn upon the Supreme Court's discussion of "subterfuge" in *McMann* and *Betts*, and they uniformly adopt a like approach.   *See, e.g.*, *Feldman v. Nassau County*, 434 F.3d 177, 183 (2d Cir. 2006); *Minch v. City of Chicago*, 363 F.3d 615, 624 (7th Cir. 2004); *Leonard F. v. Israel Disc. Bank of N.Y.*, 199 F.3d 99, 103-06 (2d Cir. 1999) (similar interpretation of "subterfuge" in Americans with Disabilities Act context); *Rouse v. Berry*, 680, F. Supp. 2d 233, 237 (D.D.C. 2010) (citing *McMann*, 434 U.S. at 203, for the proposition that "[s]ubterfuge is defined as a scheme, plan, stratagem, or artifice of evasion"); *Weddum v. Davenport Cmty. Sch. Dist.*, 750 N.W.2d 114, 119 (Iowa 2008) (adopting the "scheme, plan, strategem, or artifice of evasion" definition in *McMann*).   According to the Supreme Court,

then, as well as a multitude of lower federal and state courts, "subterfuge" means "a scheme, plan, stratagem, or artifice of evasion."  Additional dictionary definitions of the term "subterfuge" include: "a clever plan or idea used to escape, avoid, or conceal something," Black's Law Dictionary 687 (3d pocket ed.); "deception by artifice or stratagem in order to conceal, escape, or evade," Merriam-Webster's Dictionary; and "the use of tricks especially to hide, avoid, or get something," Merriam-Webster's Learner's Dictionary.  Notably, one of the cases cited by Defendant considers a similar criminal charge under 21 U.S.C. § 843(a)(3) and embraces these definitions of "subterfuge" by analyzing whether the defendant's conduct involved "trickery" to satisfy the statute.  *See United States v. Wilbur*, 58 F.3d 1291, 1292 (8th Cir. 1995).  Thus, Defendant's factual basis is sufficient if he knowingly obtained possession of hydrocodone by means of a plan or trick to hide, avoid, conceal, or get something (subterfuge).

Although the record before the Court is not limited to the VA agreements, those documents, in combination with prescription records from the Board of Pharmacy, suffice to establish a "scheme, plan, stratagem, or artifice of evasion."  *McCann*, 434 U.S. at 203.  It is readily apparent from the record that Defendant was receiving hydrocodone from outside sources when he signed the VA agreements in 2006 and 2009.  It is equally clear that he continued to receive hydrocodone from outside sources after executing the agreements.  The VA agreements contemplate that Defendant was to utilize the VA as his only source of pain medication unless directed otherwise, and at no point does Defendant assert that he was ignorant of this fact.[4]  Such a course of behavior, on its own, is

---

[4] In fact, one memoranda of interview presented by the United States in the factual basis hearing demonstrates that, in 2006, Defendant was expressly instructed by his treating VA physician that the VA hydrocodone prescription would be discontinued if any outside pain medication was discovered.  (Docket 31 at 5-6.)

9

sufficient to amount to the kind of "trickery to get something by deception" that the term "subterfuge" encompasses.

In further considering whether Defendant acted by subterfuge, the Court has reviewed several interviews presented by the United States at the factual basis hearing. Those interviews illustrate that Defendant was periodically asked routine question about medication, both over-the-counter and prescription, that he was taking. At no point did Defendant respond that he was obtaining hydrocodone from other sources. These exchanges between VA personnel and Defendant, though not indisputably established, substantiate the Court's finding that Defendant knowingly schemed to mislead the VA physicians and staff.

### IV.  CONCLUSION

For the reasons set forth above, the Court **FINDS** that there is an adequate factual basis for Defendant's guilty plea. The Court **SCHEDULES** final disposition of this matter for **March 22, 2011, at 1:30 p.m. in Charleston**.


**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to the Defendant and counsel, the United States Attorney, the United States Probation Office, and the United States Marshal.

ENTER:          March 7, 2011

_____
THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE